UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES THOMAS WALTON,

                Petitioner,                          Case No. 18-cv-11985

v.                                         Honorable Linda V. Parker

SHERMAN CAMPBELL,

                Respondent.

_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner James Thomas Walton, a state prisoner in the custody of the Michigan Department of Corrections, filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his state convictions for assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b.  Walton alleges as grounds for relief that his sentence was disproportionate and vindictive and that the state trial court abused its discretion when it denied his pretrial request for substitution of appointed counsel.

Respondent Sherman Campbell urges the Court to deny the petition because Walton's claim about the denial of his request for substitution of counsel is not

cognizable on habeas review and his sentencing claim lacks merit and was not raised at all levels of state court review.  The Court agrees that Walton's claims do not warrant habeas corpus relief.  Accordingly, the petition will be denied.

## I. Background

Walton initially was charged in Genesee County, Michigan with assault with intent to commit murder, carrying a concealed weapon, felon in possession of a firearm, and felony firearm.  The prosecution initially offered to reduce the assault charge to felonious assault and to recommend a sentence of probation if Walton pleaded guilty or no contest to felonious assault.  The plea agreement also required Walton to plead guilty or no contest to felony-firearm, which carried a mandatory sentence of two years in prison.  The prosecutor agreed to dismiss the other charges, and the trial court described the plea offer as "very generous," but Walton rejected it.  (3/22/16 Trial Tr. at 7-12, ECF No. 10-6, Pg ID 496-501.)

A trial then commenced in Genesee County Circuit Court.  Midway through trial, the prosecution made another plea offer.   The offer consisted of reducing the first count from assault with intent to commit murder to felonious assault if Walton pleaded guilty to carrying a concealed weapon, felon in possession of a firearm, and felony-firearm.  (*Id*. at 177-178, Pg ID 667-668.)  Defense counsel pointed out that, given the sentencing guidelines, Walton would have to serve 2 years in prison

for the felony-firearm conviction and then another 23 months to 5 years in prison if

he accepted the offer.  Walton rejected the offer.  (*Id*. at 178, Pg ID 668.)

The testimony at trial indicated that Walton fired several gunshots at the

father of three of his grandchildren.   The victim testified that he was seated in his

vehicle at the time.  Walton, however, testified that the victim got out of his

vehicle and approached him with a gun.  Walton claimed that he rushed the victim

at that point and his gun went off during their scuffle.

On March 24, 2016, the jurors acquitted Walton of carrying a concealed

weapon and assault with intent to commit murder.  They found Walton guilty of

assault with intent to do great bodily harm less than murder (as a lesser-included

offense of assault with intent to commit murder), felon in possession of a firearm,

and felony firearm.  (3/24/16 Trial Tr. at 7, ECF No. 10-8, Pg ID 914.)

On April 25, 2016, the trial court sentenced Walton as a habitual offender to

47 months (3 years, 11 months) to 15 years in prison for the assault conviction, a

concurrent term of 30 months (2½ years) to 7½ years in prison for the felon-in-

possession conviction, and a consecutive term of 2 years in prison for the felony-

firearm conviction, with 231 days credit on the felony-firearm sentence for time

served.  (4/25/16 Sentence Tr. at 17, ECF No. 10-9, Pg ID 935.)

Walton appealed his convictions and sentence and argued through counsel

that (1) the trial court abused its discretion by denying his request for substitution

of court-appointed counsel before trial, and (2) the sentence imposed was

unreasonable and violative of the Sixth Amendment and *People v. Lockridge*, 870

N.W.2d 502 (Mich. 2015).  (*See* Brief of Defendant-Appellant, ECF No. 8-2, Pg

ID. 98.)  The Michigan Court of Appeals affirmed Walton's convictions and

sentences.  *People v. Walton*, No. 332901, 2017 WL 4654973 (Mich. Ct. App. Oct.

17, 2017) (unpublished).

In a *pro se* application for leave to appeal in the Michigan Supreme Court,

Walton raised the same claims and an additional claim about the presumption of

vindictiveness at sentencing.  The Michigan Supreme Court denied leave to appeal

on April 3, 2018, because it was not persuaded to review the questions presented to

the court.  *People v. Walton*, 909 N.W.2d 251 (Mich. 2018) (table).  On June 22,

2018, Petitioner filed the current habeas petition.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or

>  (2) resulted in a decision that was based on an
>  unreasonable determination of the facts in light of the
>  evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that

even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Substitution of Counsel

Walton alleges first that the state trial court abused its discretion by denying his request for substitution of appointed counsel before trial. His concern was that his trial attorney, David Clark, did not visit him in jail or speak to him outside the courtroom.

Walton claims in his habeas petition that the lack of communication made it impossible for Clark to understand his version of the facts and to prepare a defense. Walton further alleges that Clark's response to his request for substitution of counsel was arrogant and demeaning and that Clark did not seem to care about representing him, speaking to him, or preparing a defense.  Walton concludes that "good cause" existed for substitution of counsel because there was a legitimate difference of opinion between him and his appointed attorney on a fundamental trial tactic.  (Br. in Support of Pet. for Writ of Habeas Corpus at 8-11, ECF No. 1, Pg ID 23-26; Reply to Answer to Pet. at 1-4, ECF No. 9, Pg ID 261-264.)

With respect to this claim, the Michigan Court of Appeals found that Walton had not shown "good cause" for the removal of Mr. Clark and the appointment of a different attorney.  The Court of Appeals concluded that the trial court did not abuse its discretion by denying Walton's request for substitute counsel and that Walton was not entitled to reversal of his convictions.

### 1.  Clearly Established Federal Law

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  This right is applicable to the states through the Fourteenth Amendment, *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963)), and "implicit in this

guarantee is the right to be represented by counsel of one's own choice." *Linton v. Perini*, 656 F.2d 207, 208 (6th Cir. 1981) (citing *Powell v. Alabama*, 287 U.S. 45 (1932)).

Nevertheless, "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).  In other words, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  A trial court, moreover, has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Id*. at 152 (internal and end citations omitted); *see also United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971) ("A motion for new court-appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court.").

When reviewing a trial court's denial of a motion for substitution of counsel, courts may consider: "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that

conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012).  A defendant who seeks

substitution of appointed counsel late in the case, "must show good cause such as a

conflict of interest, a complete breakdown in communication or an irreconcilable

conflict with his attorney in order to warrant substitution." *Wilson v. Mintzes*, 761

F.2d 275, 280 (6th Cir. 1985).

### 2.  The Request for Substitution of Counsel

At a pretrial hearing about 5 weeks before trial, Walton complained that Mr.

Clark was busy, and he asked whether he could have his former attorney, Major

White, represent him.[1]  Clark responded that, if Walton wanted Mr. White to

represent him, he could arrange that, but that White was as busy as Clark.  Walton

claimed that he did not want Clark because Clark was "tied up," but Clark

responded that he was always tied up, and the trial court stated, "They're very

busy.  They go from court to court.  There's five courts and they go right around

the building all the time."  (2/9/16 Proceeding at 4, ECF No. 10-4, Pg ID 321.)

Walton responded that the only time he saw Clark was when he was in front of the

court, and when Clark countered that he saw Walton in jail a day earlier, Walton

---

[1] Mr. White represented Walton briefly in state district court.  (*See* 67th District
Court Register of Actions, No. 15-1806FY, ECF No. 8-2, Pg ID 145-147, 149.)  The
Genesee County Circuit Court Administrator subsequently appointed Mr. Clark to
represent Walton, but no reason was given for the substitution of counsel.  (*See* ECF
No. 8-2, Pg ID 151.)  Clark then represented Walton at the preliminary examination,
at trial, and at sentencing.

said, "Yeah, that's the first time I [saw] you.  You told me three times you [were]

coming to see me."  (*Id.*)

Continuing, Walton stated that he did not want to be a burden and that if

Clark had something more serious to do, he did not want to prevent Clark from

doing what he was trying to do.  (*Id.* at 5, Pg ID 322.)  Clark replied, "There will

come a time when I'm talking to you and ten other guys . . .  [;] that's how this

works. . . .   I've been working with [you] for five months . . . .  [Y]our day will

come."  (*Id.*)

The trial court then stated that Walton had some serious legal problems, but

if he and Clark decided they wanted to bring a motion to have Clark withdraw

from the case, they had time to figure that out, because the new trial date was

March 17.  (*Id.* at 6, Pg ID 323.)  Clark responded that he would work on it, and he

informed Walton that he could get somebody who would give Walton all the time

he wanted, but that it would be someone who had recently graduated from law

school.  (*Id.*)  When Walton asked again whether he could have Mr. White

represent him, the trial court said that the only lawyer who had been on the case

was Clark, but if Walton had hired White, he could pay White and have White

return.  (*Id.*)  The proceeding concluded with Walton stating that someone told him

not to hire anyone.  (*Id.* at 6-7, Pg ID 323-324.)

### 3. Defense Counsel's Conduct, Communication, and Preparation for Trial

Mr. Clark did not file a motion to withdraw from the case, and the issue was not raised again. Walton, nevertheless, contends that Clark's response to his request for substitution of counsel was arrogant and demeaning and that Clark did not seem to care about representing him, speaking to him, or preparing a defense.

There is no Sixth Amendment right to a meaningful relationship between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 and 14 n.6 (1983). Additionally, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Id.* at 11. As stated in *Easter v. Estelle*, 609 F.2d 756 (5th Cir. 1980), "the brevity of time spent in consultation, without more, does not establish that counsel was ineffective." *Id*. at 759. Therefore, it is not enough merely to show that counsel met with the defendant only a few times before trial "as long as counsel devoted sufficient time to insure an adequate defense and to become thoroughly familiar with the facts of the case and the law applicable to the case." *Id.*

The transcript of trial shows that Mr. Clark was well prepared for trial, as he was familiar with the facts of the case and with state law. He made an opening statement and competently cross-examined prosecution witnesses, including an expert witness on firearm and tool marks. Clark also consulted Walton about the

prosecution's plea offers, testifying at trial, and at least one other matter.  He

subsequently presented both Walton and one other individual as defense witnesses,

and he was successful in persuading the trial court to read a jury instruction on the

lesser-included offense of felonious assault.  He also instructed Walton at one point

during the trial not to hand irrelevant material from the preliminary examination to

the trial court because that was not permitted by law and it was not the appropriate

time for the court to review the material.

Clark stipulated to the fact that Walton had a prior felony conviction so that

the jury would not hear evidence regarding the nature of the prior felony.  He also

gave a closing argument in which he claimed that the victim lied about how the

incident occurred, because the forensic evidence was inconsistent with the victim's

testimony and consistent with Walton's testimony.  Finally, Clark was successful

in having the jury acquit Walton of the most serious charge and one of the firearm

charges.

### 4.  The Trial Court's Findings of Fact; the Difference of Opinion Regarding Trial Strategy

Walton contends that the trial court did not state its findings about

substitution of counsel on the record.  But that contention is based on state law, and

a federal habeas court generally does not review alleged violations of state law.

*Bowling v. Parker*, 344 F.3d 487, 503 n.5 (6th Cir. 2003) (citing *Estelle v.*

*McGuire,* 502 U.S. 62, 67-68 (1991) (reemphasizing "that it is not the province of

a federal habeas court to reexamine state-court determinations on state-law

questions.  In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United

States.")).

Walton also contends that he and his attorney had a legitimate difference of

opinion regarding a fundamental trial tactic.  Walton has not articulated the nature

of the difference of opinion between him and Clark, and the record reveals only a

difference of opinion on whether Walton should accept the prosecution's initial

plea offer and whether Walton should testify at trial.  Walton rejected the plea

offer, despite Clark's advice to accept the offer because it would have resulted in

only two years in prison.  (3/22/16 Trial Tr. at 7-12, ECF No. 10-6, Pg ID 496-

501.)  Walton also testified, despite Clark's advice that doing so would be a

mistake.  (3/23/16 Trial Tr. at 61-62, ECF No. 10-7, Pg ID 816-817.)  There was

not a complete breakdown in communication, and the difference of opinion

between Walton and his attorney did not prevent Walton from presenting his

version of the facts to the jury.

Although Clark seemed impatient with Walton at times, both the trial court

and the prosecutor acknowledged Clark's ability to represent Walton.  In the jury's

absence, the prosecutor stated that she and defense counsel had tried numerous

cases together and that she thought defense counsel believed in his client and

wanted to do what was right.  (3/22/16 Trial Tr. at 177, ECF No. 10-6, Pg ID 667.)

The trial court subsequently commented on Clark's 30 years of experience and his

ability to follow the proper procedures.  (*See id*. at 263, Pg ID 753.)

### 5.  Conclusion on the Substitution-of-Counsel Claim

The record fails to show a complete breakdown in communication or an

irreconcilable conflict between Walton and his trial attorney.  Defense counsel

adequately represented Walton, and Walton has not shown "good cause" for

substitution of counsel.  He has not identified a trial tactic that he wished to pursue

that his attorney did not.  Therefore, the state appellate court's conclusion – that

the trial court did not abuse its discretion by denying Walton's request for

substitute counsel – was objectively reasonable, and Walton is not entitled to relief

on his claim.

### B.  The Sentence

Walton's only other claim challenges his sentence.  He alleges that the trial

court imposed a sentence which was unreasonable and violative of the Sixth

Amendment and the Michigan Supreme Court's decisions in *Lockridge*, 870

N.W.2d at 502, and *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990).  Specifically,

Walton claims that the sentence was disproportionate to the offense.  (Br. in

Support of Pet. for Writ of Habeas Corpus at 11-12, ECF No. 1, Pg ID 26-27.)

Walton also argues that his sentence was presumptively vindictive. The basis for this claim is that Walton received the maximum sentence recommended under the state sentencing guidelines for the assault conviction, as opposed to the prosecutor's recommendation of probation in exchange for a guilty plea. (*Id.* at 12, Pg ID 27.)

Although Respondent contends that Walton did not exhaust state remedies for his vindictiveness claim, as required by 28 U.S.C. § 2254(b)(1) and Supreme Court precedent, the exhaustion requirement is not jurisdictional. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). The Court may deny a habeas petition on the merits despite the failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2). Walton's vindictiveness claim lacks substantive merit. The Court, therefore, will dispose of that claim on the merits rather than analyze the exhaustion issue.

### 1. The Proportionality Claim

Walton claims that his sentence is disproportionate under *Milbourn* and *Lockridge*. In *Milbourn*, the Michigan Supreme Court rejected the "shocks the conscience" test for determining whether a particular sentence represented an abuse of discretion. The state supreme court then stated that "a given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and

the offender." *Milbourn*, 461 N.W.2d at 2-3.  In *Lockridge,* the Michigan Supreme

Court stated that "[a] sentence that departs from the applicable guidelines range

will be reviewed by an appellate court for reasonableness" and that [r]esentencing

will be required when a sentence is determined to be unreasonable." *Lockridge*,

870 N.W.2d at 521.

The United States Supreme Court has stated, however, that "[t]he Eighth

Amendment does not require strict proportionality between crime and sentence.

Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the

crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

concurring in part and concurring in the judgment).  Walton's longest sentence (3

years, 11 months to 15 years for the assault) was not grossly disproportionate to the

crime if one considers evidence that the victim was unarmed, he suffered pain from

being shot several times, and he required surgery as a result of the shooting.

The sentence, moreover, fell within Michigan's sentencing guidelines and

within the maximum sentence set by law.  The severity of a sentence that falls

within the limits set by statute is not a ground for habeas corpus relief.  *Townsend*

*v. Burke,* 334 U.S. 736, 741 (1948).  Thus, "[a] sentence within the statutory

maximum set by statute generally does not constitute 'cruel and unusual

punishment' " under the Eighth Amendment.  *Austin v. Jackson*, 213 F.3d 298, 302

(6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)

(citing *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994))).

Finally, because "federal habeas corpus relief does not lie for errors of state

law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), the contention that the state trial

court violated Michigan law fails to state a claim for which habeas corpus relief

may be granted, *Austin*, 213 F.3d at 300 (citing *Pulley v. Harris,* 465 U.S. 37, 41

(1984)).  Walton's proportionality claim lacks merit, and the state appellate court's

rejection of the claim was objectively reasonable.

### 2.  The Vindictiveness and Sixth Amendment Claims

Walton's claim that the sentence was presumptively vindictive likewise

lacks merit.  He speculates that the state trial court sentenced him at the top of the

guidelines for his minimum sentence because he rejected the prosecution's plea

offer.

"It is improper for a [ ] judge to penalize a defendant for exercising his

constitutional right to plead not guilty and go to trial, no matter how overwhelming

the evidence of his guilt."  *United States v. Derrick,* 519 F.2d 1, 3 (6th Cir. 1975)

(citing *Baker v. United States*, 412 F.2d 1069 (5th Cir. 1969)).  "However, the

mere imposition of a longer sentence than defendant would have received had he

pled guilty and had the court accepted his guilty plea does not automatically

constitute vindictive or retaliatory punishment." *Williams v. Jones*, 231 F. Supp. 2d 586, 599 (E.D. Mich. 2002).

In this case, moreover, there is no indication in the record that the sentence imposed was punishment for Walton's rejection of the prosecution's plea offers. Instead, the court expressed concern that the victim was seriously injured, that he had two surgeries, and that he would probably have problems for the rest of his life. (4/25/16 Sentencing Tr. at 17, ECF No. 10-9, Pg ID 935.)

As for Walton's Sixth Amendment claim, it is a conclusory claim, and "merely stating in a conclusory manner that a constitutional right was violated does not entitle the petitioner to habeas relief, unless review of the record shows such a violation did indeed occur." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 486 (E.D. Mich. 2004). The record in this case fails to show that the state trial court violated a constitutional right when sentencing Walton. Therefore, Walton's conclusory Sixth Amendment claim fails.

## III. Conclusion

The state appellate court's adjudication of Walton's claims about the trial court's failure to appoint substitute counsel and the proportionality of the sentence was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts. The state court's decision also was not so lacking in justification that there was an error

beyond any possibility for fair-minded disagreement.  In addition, the

vindictiveness claim, which the Michigan Court of Appeals did not adjudicate on

the merits, is not supported by the record and lacks merit.  Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied

because reasonable jurists could not disagree with the Court's resolution of Walton's

claims.  Nor could reasonable jurists conclude that the issues deserve encouragement

to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000)).

**IT IS FURTHER ORDERED** that Walton may proceed *in forma pauperis*

on appeal if he appeals this decision because he was permitted to proceed without

prepayment of the fees and costs for this action (*see* ECF No. 3), and an appeal

could be taken in good faith, 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

**IT IS SO ORDERED.**

                                                s/ Linda V. Parker_____
                                                LINDA V. PARKER
                                                U.S. DISTRICT JUDGE

 Dated: August 24, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 24, 2021, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan

Case Manager
